IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03632-KLM

TANYA HALLUM, individually and as the personal representative of the Estate of Charlie Hallum, and
JESSE HALLUM, individually,

      Plaintiffs,

v.

FOUR CORNERS OB-GYN, a professional LLP, and
MARECA PALLISTER, Dr., individually,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiffs' **Motion to Extend Plaintiffs' Expert Disclosure Deadline** [#170][1] (the "Motion for Extension") and on Defendant Four Corners OB-GYN's **Motion to Preclude Plaintiff Expert Testimony and to Dismiss Case Due to Rule 37 Violation** [#194] (the "Motion for Sanctions").[2]  Defendant[3] filed a Response [#179] in opposition to the Motion for Extension [#170], and Plaintiffs filed a Reply [#183]. Both sides also filed simultaneous Supplemental Briefs [#235, #236] in connection with the

_____

[1]  "[#170]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  The Court uses this convention throughout this Order.

[2]  This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2, on consent of the parties. *See* [#226, #227].

[3]  The Motions [#170, #194] are only briefed by Defendant Four Corners OB-GYN, and therefore the Court refers to this Defendant solely as "Defendant" throughout.

Motion for Extension [#170].[4]  Plaintiffs filed a Response [#205] in opposition to the Motion for Sanctions [#194], and Defendant filed a Reply [#232].  The Court has reviewed the Motions, the Responses, the Replies, the Supplemental Briefs, the entire case file, and the applicable law, and is fully advised in the premises.  For the reasons set forth below, the Motion for Extension [#170] is **GRANTED** and the Motion for Sanctions [#194] is **DENIED**.

## I.  Background

This action relates to alleged medical malpractice. It was originally filed in the District of New Mexico, and had a substantial procedural history there before it was transferred to the undersigned in the District of Colorado on December 20, 2019, more than three months after the Motion for Extension [#170] was filed and one month after the Motion for Sanctions [#194] was filed.  The factual background to the present dispute is convoluted and the parties argue in detail about what was said and known at any given time.  Therefore, the Court presents the timeline underlying this dispute in detail.

This lawsuit was filed in the District of New Mexico on January 5, 2017. *See Compl.* [#1].  According to Plaintiffs' former counsel Jason Eley ("Eley"), from July 1-4, 2017, he and his co-counsel Christian Hatfield ("Hatfield") consulted with Dr. Robert Asgharian ("Asgharian") about obtaining his expert medical opinion in this case.  *See* [#205-4] at 1.  On July 3, 2017, Mr. Eley e-mailed Dr. Asgharian: "I understand you have been in communication with Mr. Hatfield regarding a malpractice case in Aztec,NM/Durango,CO.  Attached is a request for expert review.  I will forward the records in a follow up email." *See*

---

[4]  The Supplemental Briefs were permitted on December 13, 2019, by the previous Magistrate Judge assigned to the case in the District of New Mexico, one week before the case was transferred to the District of Colorado.  *See* [#208].

[#205-5] at 4.  On July 4, 2017, Dr. Asgharian responded:

> I have read your initial letter of summary which was attached to this email.
>
> My initial review of the full medical records will probably take several hours (I would estimate about 2-4 hours based on the number of pages).   As previously mentioned in my prior correspondence, my rates for review are $375.  This time estimate obviously does not include drafting of the expert witness report.
>
> After I have had a chance to review the medical record, I can speak with counsel on the issues and merits of the case and what my opinions are. After that time, if the attorneys wish to continue to retain me as the expert witness, I can proceed with the expert witness report.
>
> In the interest of full disclosure, I would like to inform you that the vast majority of the cases that I agree to take on as an expert witness are for the defense.  I do occasionally take on cases for the plaintiff when I feel that there is gross negligence and egregious violations of medical standards of care.
>
> Let me know if you would like for me to proceed and I can begin reviewing the medical records.

*Id.* at 3-4.

The next day, July 5, 2017, Mr. Eley replied: "We would like you to proceed."  *Id.* at 3. That evening, Dr. Asgharian responded: "I am getting ready to leave town this weekend for a 1 week vacation.  What kind of time frame are you gentlemen looking at?  Would it be acceptable to look at the records and discuss the case right when I get back?"[5]  *Id.* Immediately after, Mr. Hatfield replied: "You bet.  There is a stay on discovery while we resolve some jurisdictional issues.  We should be fine for a bit as long as we can list you as a consultant with a report due at some point in the future.  We are going to have a

---

[5]  The precise start date and end date of Dr. Asgharian's vacation is unclear and a point of contention between the parties given its potential impact on whether a conversation with Mr. Eley could have occurred on July 13, 2017, as discussed further below.

hearing in a few weeks to discuss what is stayed and what isn't, among other things." *Id.*

at 2. Two days later on July 7, 2017, Dr. Asgharian responded: "I'll start looking at the

records as soon as I get back." *Id.*

Mr. Eley recalls that on July 13, 2017, Mr. Hatfield and Mr. Eley spoke with Dr.

Asgharian on the phone, discussed his review of the case, and agreed to continue with him

as an expert in the case. See [#205-4] at 1. On July 18, 2017, Plaintiffs timely disclosed

Dr. Asgharian as an affirmative expert witness. *See Pls.' Expert Witness Disclosure* [#170-

1]; *Scheduling Order* [#31] at 2 (setting a July 20, 2017 deadline for Plaintiffs' expert

disclosure). The disclosure, signed by Mr. Eley, stated that Dr. Asgharian would testify

regarding:

> i. Defendant's duty of care, establishment of appropriate protocols in the management and assessment of high-risk patients presenting with pregnancy complications. ii. Failure of Defendants to identify and diagnose the Plaintiff Tanya Hallum's symptoms of pain. iii. Defendants' failure to recommend appropriate care to the Plaintiff. iv. Defendants' failure to meet the proper standard of medical care in the evaluation and treatment of Plaintiff Tanya Hallum. v. Cause of Charlie Hallum's loss of change of life [sic], pain, suffering and ultimate death and extreme emotional distress and other damage to Charlie Hallum. vi. Defendants', their agents, agencies, and employees [sic] breach of their duty of care in the implantation of birth control devices. vii. Defendants', their agents, agencies, and employees [sic] breach of duty of care and failure to properly implant a birth control device in Plaintiff Tanya Hallum. viii. Cause of Plaintiff Tanya Hallum's loss of her uterus, pain, suffering, and extreme emotional distress. ix. Cause of the damages suffered by Plaintiffs Tanya Hallum and Jesse Hallum. x. Defendants failed to provide the proper care to Tanya Hallum and Charlie Hallum. Had the minimum standard of care been provided, Charlie Hallum could have survived past birth.

*See* [#170-1] at 1-2.

On August 13, 2017, Dr. Asgharian wrote to both Mr. Hatfield and Mr. Eley: "I have

completed my review of the medical records. Let me know when you have some time and

we can set up a date for the telephone conference to review the case." *See* [#205-5] at 2.

Mr. Hatfield states he does not recall whether he participated in that conference, but "Dr.

Asgharian did not reach an opinion contrary to our theory of the case." *See* [#205-4] at 2.

However, Dr. Asgharian later testified at his deposition on December 6, 2019, that Plaintiffs'

counsel "asked me to review the case and I said I would review the case and then discuss

the merits of the case and that never happened.  So there was never any understanding

that I would for sure be their expert witness." *See* [#232-1] at 33-34.  Dr. Asgharian was

also apparently asked at the time of the alleged conference to put his work on hold while

jurisdictional issues were resolved by the Court via motions practice. *Id.*; *see also* [#232-1]

at 30 (Dr. Asgharian confirming at his deposition that no one ever asked him to generate

an expert report).

On February 12, 2018, Dr. Asgharian contacted Mr. Hatfield and Mr. Eley by e-mail:

My name is Dr. Robert Asgharian.  I am an OB/GYN in El Paso, Texas.  I spoke with you initially concerning a medical malpractice case starting on July 3 of 2017.  I completed the review of the medical records and attempted to contact you both several times through email and did not get a response back from either of you.

I am of course referring to the case involving Tanya (mother), Jesse (father) and Charlie Hallum (deceased child).

I do not know if this case is still active or if it has been dropped or settled.

I am trying to close out my outstanding medical malpractice expert review work for 2017.  I would like to submit my invoice for payment so we can close out for 2017.  My total billable hours should be approximately 5 hours.

Please contact me at your earliest convenience either by email or my cell phone.

*See* [#205-5] at 1-2.  The next day, February 13, 2018, Mr. Eley responded: "We are

waiting on a ruling from the judge about some jurisdictional matters and have been in a

holding pattern for awhile.  There has been no action happening on the case but it is still active.  Let us know if you need anything in regard to the case.  Thanks again for checking in on this.  Sorry if we didn't reply to a previous email."  *Id.* at 1.  The same day, Dr. Asgharian replied:

> That is fine.  I would be more than happy continue to help you on this case and am ready to go when you are.
>
> For accounting and billing purposes, do you mind if I go ahead and close out the case for the work I have already done.
>
> As I mentioned before, I have spend [sic] a total of 5 hours total [sic] on our telephone conferences and my initial review of all the medical records.
>
> Once [sic] of the things I have learned from years of experience is that when outstanding balances and receivables start to age and approach new years, they get lost and forgotten.
>
> Let me know if you agree and I will forward the invoice.

*Id.*  Mr. Eley responded the same day, stating "Christian [Hatfield] makes these decisions. Whatever he says goes.  Thanks."  *See* [#183-1] at 1.  That night, Mr. Hatfield forwarded the e-mail thread to Carrie Burns and Mitch Burns, asking: "Can we cut a check and recoup as costs when we resolve this?  This is the med mal case."  *Id.*; *see also* [#205-4] at 2 (Mr. Hatfield stating that Dr. Asgharian's request was forwarded to the firm accountant, although he does not know whether the invoice was ever actually paid).

According to Mr. Eley, in September 2018, Plaintiffs engaged counsel from the Curtis law firm who have handled the case since that time.  *See* [#205-4] at 1.  However, it appears that Plaintiffs' new counsel did not enter an appearance on the case's electronic

docket until February 13, 2019. *See* [#138].[6]

On March 13, 2019, Dr. Asgharian spoke with Attorney Lisa K. Curtis ("Curtis") and

in part memorialized that conversation in a follow-up e-mail sent to Ms. Curtis the same

day. *See* [#194-1]. He wrote:

> Thanks for reaching out to me on this matter. As I mentioned to you on the phone, I reviewed this case a few years ago. I have since deleted all documentation, records, logs pertaining to this case. From my recollection, I spent about 5-7 hours reviewing this case. Unfortunately, the prior attorneys declined to pay me for my time. I made several attempts to collect on my services rendered. Despite my repeated emails and phone calls, I was not paid. As such, I dropped the pursuit and decided to just write off my losses.
>
> I did discuss with you the merits of this case or lack thereof. Again, the details of this case are vague and my recollections are not as solid as I would like but my opinion on th[e] merits of this case were not favorable for the plaintiffs. This is despite the fact that there were violations of the standard of care which was [sic] recognized by the medical board.

*Id.*

On March 15, 2019, Ms. Curtis wrote to Dr. Asgharian: "Thank you Dr. Asgharian

– I need more clarity on whether you ever gave a supportive opinion to the prior patient's

lawyers, and agreed to be the testifying expert in the case. Could you answer that for me

please?" *See* [#170-2] at 1. Dr. Asgharian responded the same day: "I did NOT give a

supportive opinion to the prior attorneys for this case. I did NOT agree to be an expert

witness for the plaintiff in this case." *Id.* Ms. Curtis replied the same day: "Thank you for

---

[6] On October 30, 2019, the Magistrate Judge formerly assigned to the case denied Mr. Hatfield's and Mr. Eley's requests to withdraw as counsel for Plaintiffs. *See Order* [#186]. Their requests were denied without prejudice pending adjudication of the Motion for Extension [#170]. *See id.* The last filing on the docket by Mr. Eley and Mr. Hatfield occurred on October 9, 2019, a Reply [#181] in support of their requests to withdraw in the case. It appears that neither Mr. Eley nor Mr. Hatfield have ever formally been permitted to withdraw, but when the case was transferred to the District of Colorado on December 20, 2019, prior to the resolution of the Motion for Extension [#170], they simply did not enter an appearance here.

that clarity.  It is important that I understand unequivocally what happened, so I can inform the clients where the case is now.  Appreciate your time.  I know you did not have to step out again on this case." *Id.*  Dr. Asgharian responded: "You are welcome.  Have a great weekend." *Id.*

On July 1, 2019, Mr. Eley forwarded to Ms. Curtis the e-mail chain recited above between him, Mr. Hatfield, and Dr. Asgharian from July 3, 2017, to Dr. Asgharian's last message on February 13, 2018.  *See* [#170-3] at 1-4.  On July 31, 2019, Ms. Curtis e-mailed Mr. Eley and Mr. Hatfield, stating: "I haven't seen anything further from you about invoices, payments or communications concerning Dr. Asgharian.  Is there anything else? I have a meeting with opposing counsel shortly and I have got to get the case moved [sic] forward, including requesting time to find and name a different expert.  If you guys paid Dr. Asgharian, that would be helpful to know.  Obviously, if there was an oversight and he wasn't paid, he still should be.  If that is the case, then I need to know if you will be paying him.  Thanks for your attention to my request." *See* [#170-5] at 1.  The next day, August 1, 2019, Mr. Eley responded: "We have looked and to the best of our knowledge dr. A [sic] did not send us any invoices we have received.  If he has one or you have one we would gladly pay him for his time." *Id.*

On August 6, 2019, Plaintiffs' counsel informed defense counsel that Plaintiffs needed a new expert witness for their case.  *Motion* [#194] at 5; *Response* [#205] at 2. That same day, Ms. Curtis e-mailed Dr. Asgharian: "I have been told by the Tucker firm that while they cannot locate any invoice from you for your prior work on the above case, they will pay you for the time you did spend, whether supportive of the case or not.  That is an appropriate decision I believe – that you are paid for your time working on the case.  If you

wish to bill the Tucker firm for your time, I have included the attorneys' emails on this email so you can reach them.  If you would like to include me on any such email, I will track this as well." *See* [#170-5] at 2.  On August 18, 2019, Dr. Asgharian responded:

> Thank you so much for being so honorable and considerate.
>
> I reached out to this law firm numerous times and after being ignored repeatedly, I gave up and wrote off the loss.  It taught me to seek a retainer when taking on plaintiff cases.
>
> Since I gave up on getting compensated for my time spent, I purged all files off my computer.  This included the medical documentation, testimonials, and my invoice of time spent on the case.  I don't have an itemized invoice of the dates and times I spent reviewing the medical records and the telephone conferences discussing the case with counsel.  I don't have an exact recollection of how much time I spent on this case since it has been several years since I looked at it.
>
> Once again, thanks for looking into this for me.  I really do appreciate it.

*Id.*

On September 12, 2019, Plaintiffs' counsel brought the expert issue to the Court's attention through the filing of the Motion for Extension [#170].  Defendant's Motion for Sanctions [#194] was filed on November 20, 2019.

On December 6, 2019, Defendant took Dr. Asgharian's deposition.  *See* [#232-1].  Dr. Asgharian reiterated there that he did not support Plaintiffs' claims and would not testify for them.  *Id.* at 35-39.  He also stated that he did not give his consent to make the July 18, 2017 disclosures because there was no conversation about his opinions before that date, he was on vacation at the time, and he had not even reviewed the medical records by then.  *Id.* at 23-25, 65-67.  He stated that there was no dispute or misunderstanding about his involvement (or noninvolvement), and that no one followed up with him to discuss his initial review of the records or whether he would agree to testify as an expert.  *Id.* at 33-34.

Plaintiffs assert that defense counsel's questioning of Dr. Asgharian was improperly leading at the deposition because he was not a hostile witness and, regardless, that his statements do not support Defendant's version of the underlying events given Dr. Asgharian's admission that his memory of the events in question was limited. *Response* [#205] at 2-3; *see also* [#194-1] (Dr. Asgharian's March 2019 written statement that "the details of this case are vague and my recollections are not as solid as I would like"). Plaintiffs also note that no questions were asked of Dr. Asgharian regarding the merits of the case at the deposition. *See* [#232-1] at 4.

On December 13, 2019, Defendant's rebuttal expert disclosure deadline was stayed "until further notice." *See* [#208]. The case was transferred to the District of Colorado on December 20, 2019, and a Status Conference was held on January 30, 2020. *See* [#210, #231]. A new Scheduling Conference was held on February 12, 2020, and new deadlines were set, including a discovery cut-off of November 30, 2020. *See* [#238] at 2. Each side was limited to one expert witness. *Id.* However, no deadlines regarding expert witnesses were set pending adjudication of the two Motions [#170, #194] at issue in this Order. In short, Plaintiffs ask for an extension of the deadline to designate affirmative expert witnesses, and Defendant asks the Court to impose the sanction of dismissal due to purported violations of Plaintiffs' disclosure obligations.

## II. Analysis

The Court's analysis here is generally comprised of up to three parts. First, the Court must determine whether there has been a violation (or violations) of Fed. R. Civ. P. 26(a) and/or (e). *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1201 (10th Cir. 2017). Second, if there was such a violation or violations, the Court must

determine whether any such violation was substantially justified or harmless under Fed. R. Civ. P. 37(a)(1) by examining the factors enunciated in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999).[7]  *Id.* at 1200-02. Third, if not substantially justified or harmless, the Court must determine appropriate sanctions under Fed. R. Civ. P. 37(a)(1).  *Id.* at 1202-03.  If the requested sanction would explicitly or essentially result in dismissal of the case, then the factors enunciated by *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992), must be considered.  *Id.* at 1203-06.

For purposes of resolving the present Motion for Sanctions [#194], the Court assumes, without so finding, that Plaintiffs' former counsel violated Fed. R. Civ. P. 26(a) by disclosing Dr. Asgharian before he had formed any opinions on the case or agreed to be an expert for Plaintiffs.[8]  The Court further assumes, without so finding, that Plaintiffs' current counsel violated Fed. R. Civ. P. 26(e) by failing to timely contact opposing counsel

---

[7]  These factors include (but are not necessarily limited to): "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply*, 170 F.3d at 993.

[8]  Fed. R. Civ. P. 26(a)(2)(B) provides in part: "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(C) provides: "Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state (i) the subject matter on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  The Court recites both Rule 26(a)(2)(B) and Rule 26(a)(2)(C) here because there is conflicting evidence regarding whether Dr. Asgharian was disclosed as a retained or a nonretained expert, although it appears that he was eventually intended to be a retained expert.  *See* [#205-5] at 2.  Regardless, the issue of whether he was intended to be retained or nonretained is immaterial to the Court's resolution of the present Motions.

about the fact that Dr. Asgharian would not serve as an expert witness in Plaintiffs' case.[9] In addition, the Court assumes, without so finding, that these violations were not substantially justified pursuant to Fed. R. Civ. P. 37(c)(1).

Turning to the issues of sanctions, Defendant asks the Court to use its broad discretion to preclude Plaintiffs from offering at trial *any* medical expert testimony regarding standard of care, causation, and damages, as well as the dismissal of this case with prejudice. *Motion for Sanctions* [#194] at 12. Defendant recognizes that its requested sanction of barring Plaintiffs from offering any medical expert testimony "will have the effect of dismissal." *Reply* [#232] at 5. Plaintiffs concur with this conclusion, *see* [#205] at 10-11, as does the Court. Given that "expert testimony in medical malpractice actions is 'necessary to determine the standards of professional care and competence which define the concept of reasonableness appropriate to adjudication of such disputes,'" the Court cannot simply prohibit medical expert testimony without also essentially mandating the dismissal of this case. *See, e.g.*, *Morales v. Rattan*, No. 17-cv-03009-PAB-KLM, 2019 WL 588192, at *4 (D. Colo. Feb. 13, 2019) ((quoting *Gorab v. Zook*, 943 P.2d 423, 427-28 n.5 (Colo. 1997) (en banc)).

The Tenth Circuit Court of Appeals has stated that, "where the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal . . . , district courts should . . . ordinarily reserv[e] the extreme sanction of dismissal for cases involving bad faith or

---

[9] Fed. R. Civ. P. 26(e)(1)(A) provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."

willfulness or instances where less severe sanctions would obviously prove futile." *HCG Platinum*, 873 F.3d at 1206.

> Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction. These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction.

*Ehrenhaus*, 965 F.2d at 921 (internal citations, ellipsis, and quotation marks omitted).

Regarding the first *Ehrenhaus* factor, i.e., the degree of actual prejudice to Defendant, the Court examines such issues as, for example, whether Defendant will be subject to "trial by ambush," any other impact of delay on the case, and the issue of fees expended by attorneys or, in this case, opposing expert witnesses. *Gallegos v. Swift & Co.*, No. 04-cv-01295-LTB-CBS, 2007 WL 214416, at *3 (D. Colo. Jan. 25, 2007); *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004) (citing *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993)).

Here, Defendant Four Corners argues that it has been prejudiced because "Four Corners and the Court have been misled for years by the representation that Plaintiffs had an expert and met their disclosure obligation." *Reply* [#232] at 6. However, Defendant fails to provide any specifics as to that prejudice. For example, Defendant states:

> It is false and misleading for Plaintiffs to argue, in an effort to show lack of harm or prejudice, that Four Corners sat around doing nothing to prepare this case for trial until Plaintiffs revealed the falsity of their expert disclosure. Just because Four Corners' expert deadline has not passed does not mean that defense counsel and defense experts have not spent time analyzing the basis for Dr. Asgharian's disclosed opinions and evaluating the merits of

Plaintiffs [sic] claims.  Counsel and experts relied on the false expert disclosure and spent time and incurred fees evaluating the purported supporting opinions and claims against Four Corners.  Indeed, calculated decisions were made in reliance on that analysis about whether it made strategic sense to take or not take Dr. Asgharian's deposition about his expert opinions.  Moreover, the procedural case delay in completing other remaining discovery resulted not from Four Corners' actions but from the uncertainty of the scope of Plaintiffs' remaining claims against Four Corners that was not resolved until the New Mexico court ruled on the last of the uncertainty in July 2019.  Rather than delay, Four Corners in 2017 completed the discovery and investigation that was appropriate and efficient to take before the court ruled on the scope of remaining claims in 2019.  Four Corners ultimately requested Dr. Asgharian's December 2019 deposition, not to explore his nonexistent opinions but to get to the bottom of Plaintiffs' false expert disclosure of him.

Nor is it harmless to report that there is a new replacement supporting expert but fail to disclose that expert's opinions.  Four Corners is no better off than there being no disclosed expert at all.  This absence of substantive information continues to delay and deprive Four Corners of the opportunity to investigate and evaluate these new opinions and mount a defense.  And, this is after Four Corners spent two years relying on the opinions of a falsely disclosed expert to make its litigation decisions and incur the expense of attorney and expert review.  Despite what Plaintiffs argue, it is a material fact that Plaintiffs are attempting to switch horses this late into the case.

*Id.* at 6-7 (internal citations to the record omitted).  Although, as general statements, Defendant's argument is appealing, the lack of any support or detail is troubling.

The Court first notes that there is certainly no actual prejudice incurred as a result of any delay or a potential "trial by ambush."  Indeed, after Defendant's Reply [#232] argument recited above was filed, the case management schedule was extended for reasons independent of this dispute.  *See* [#238].  The discovery cut-off is November 30, 2020, and the dispositive motions deadline is January 15, 2021.  *See* [#238] at 2.  Trial is set to begin on August 2, 2021.  *See id.*  Further, the deadline for Defendant to designate rebuttal expert witnesses has not yet passed.  *See* [#208] (staying Defendant's expert disclosure deadline pending further order of the Court).  Thus, there is plenty of time for any

potential prejudice incurred as a result of the need for more discovery to be cured before the November 30, 2020 discovery cut-off. *See, e.g.*, *Alexander v. Archuleta Cty, Colo.*, No. 08-cv-00912-CMA-KLM, 2010 WL 363390, at *3 (D. Colo. Jan. 27, 2010) (citing *Woodworker's Supply*, 170 F.3d at 993) (stating that "[a] Rule 26 violation may be harmless if it can be cured by further discovery"). The Court also notes that there is no indication in the briefs that the delay itself has caused any other type of incurable, actual prejudice.

Turning to the issue of time and fees, Defendant provides no indication of how much time it or its counsel spent "analyzing the *basis* for Dr. Asgharian's disclosed opinions." *Id.* at 6 (emphasis added). On July 18, 2020, Plaintiffs had merely disclosed the subject matter on which Dr. Asgharian was expected to present evidence, along with a summary of the facts and opinions to which he was expected to testify. *See* [#170-1] at 1-2. No expert report was ever provided giving the *basis* for those facts and opinions, and Dr. Asgharian was never deposed about his opinions. *See Reply* [#232] at 6 ("Four Corners ultimately requested Dr. Asgharian's December 2019 deposition, not to explore his nonexistent opinions but to get to the bottom of Plaintiffs' false expert disclosure of him.").

Even setting that issue aside, there is no supporting evidence, or even an unsupported estimate, of how much time and/or fees Defendant believes was essentially wasted, whether by Defendant's counsel or by any potential rebuttal expert witness, in reliance on Plaintiffs' disclosure of Dr. Asgharian. It is also unclear *when* this time was allegedly wasted. For example, was the time wasted after Plaintiffs' new counsel first discovered that Plaintiffs would (likely) not be able to use Dr. Asgharian? In other words, did Defendant's alleged prejudice regarding time and fees stem from the purported Fed. R. Civ. P. 26(a) violation, the purported Fed. R. Civ. P. 26(e) violation, or both? It is

impossible to tell based on Defendant's argument.  Thus, although Defendant may have been prejudiced by Dr. Asgharian's disclosure, it is difficult for the Court to find that Defendant incurred any *actual* prejudice in the absence of even minimal evidence on these sorts of issues.

Given that dismissal is an "extreme sanction," *see HCG Platinum*, 873 F.3d at 1206, the Court cannot simply rely here on vague assertions of prejudice.  Therefore, in the absence of any evidence demonstrating actual, incurable prejudice, the Court finds that this factor weighs heavily against dismissal.

Regarding the second *Ehrenhaus* factor, i.e., the amount of interference with the judicial process, Defendant states:

> Knowing misrepresentations in the form of a false expert disclosure and years of failure to give notice, rectify the error, and seek relief from the court, all the while that the rest of the case marched forward to trial, with multiple substantive rulings—cannot be described as anything other than interference with the judicial process.  Plaintiffs cannot reasonably contest that they placed Four Corners on unequal footing in this case or contend that they did not alter the course of proceedings in this case by failing to disclose their knowing violation.

*Reply* [#232] at 8-9.  Again, the lack of detail here is troubling to the Court.  While Defendant's arguments are broadly reasonable, something more is required before the Court can impose the "extreme sanction" of dismissal.  *See HCG Platinum*, 873 F.3d at 1206.  For example, there is no detail provided here about *how* Defendant was placed on "unequal footing" specifically by Dr. Asgharian's disclosure, or *how* the "course of proceedings" was altered by Plaintiffs' alleged mistakes.

However, the Court notes that, to the extent there were rule violations (and especially the purported violation by Plaintiffs' former counsel), Plaintiffs' actions

necessarily interfered with the effective administration of justice.  The issue here "is respect for the judicial process and the law." *See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003).  Plaintiffs' former counsel's violation, as alleged, evidences a complete lack of respect for the Court and the judicial process.  In particular, their actions caused the undersigned and her staff to expend *significant* unnecessary time and effort in an attempt to unravel the convoluted history of this case as it concerns the designation of Dr. Asgharian.  This time and effort increases the workload of the Court and takes its attention away from other matters where the parties have fulfilled their obligations and are deserving of prompt resolution of their issues.  "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document." *Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006).  Therefore, the Court finds that this factor weighs at least slightly in favor of dismissal.

Regarding the third *Ehrenhaus* factor, i.e., the culpability of the litigant, the Court first notes that there is no indication that the litigants themselves, i.e., Plaintiffs Tanya Hallum and Jesse Hallum, have any culpability whatsoever.  The culpability, if any, clearly lies with counsel based on the evidence before the Court.  Given "the judicial system's strong predisposition to resolve cases on their merits," *Ehrenhaus*, 965 F.2d at 921, this conclusion weighs heavily against dismissal.

As for Plaintiffs' current counsel and the purported violation of Fed. R. Civ. P. 26(e), there is no indication that such "aggravating factors" as "bad faith or willfulness" played any role in their decision to delay informing Defendant's counsel that Dr. Asgharian would have to be withdrawn.  *See HCG Platinum*, 873 F.3d at 1204.  Plaintiffs' current counsel asserts

that they have "been honest, transparent, and acted in good faith regarding the expert witness." *Response* [#205] at 11.  Even Defendant concedes that Plaintiffs' new counsel "did not overlook this issue and spent significant time in at least May, June, and July 2019 discussing the matter internally and with original counsel." *Motion* [#194] at 5.  While it seems that these issues could have, and should have, been addressed sooner, and that Plaintiffs' current counsel is culpable for the decision about when to inform Defendant's counsel of the issue regarding Dr. Asgharian, the Court cannot find that there is any evidence that Plaintiffs' current counsel were acting in bad faith or willfully flouting Plaintiffs' obligations under Fed. R. Civ. P. 26(e). Thus, because Plaintiffs' current counsel made the decision to delay informing Defendant's counsel, but because there is no indication of bad faith or willfulness, the Court finds their actions to be neutral as to the "extreme sanction" of dismissal.

As for Plaintiffs' former counsel and the purported violation of Fed. R. Civ. P. 26(a), the known facts give the Court pause, because they certainly could be construed as showing bad faith on the part of Plaintiffs' former counsel.  The Court notes, however, that it is not a foregone conclusion that Plaintiffs' former counsel acted in bad faith in their disclosure of Dr. Asgharian, as Defendant argues. *See, e.g.*, *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988) ("We recognize, however, that it is not always easy to determine whether a course of conduct is the result of mere inattention by counsel or is a matter of strategy on their part.").  Defendant's explanation is certainly a viable explanation for these events, i.e., that Plaintiffs' former counsel knowingly disclosed opinions by Dr. Asgharian that he never had.  This perhaps may even be the most compelling explanation for the underlying events, although the Court believes, based on

the evidence before it, that there may also have been some degree of miscommunication between Dr. Asgharian and Plaintiffs' former counsel involved here.  Regardless, the Court is loathe to impose the "extreme sanction" of dismissal as a result of finding that Plaintiffs' former counsel acted in bad faith without more explicit evidence demonstrating reprehensible conduct.  To penalize Plaintiffs themselves, who are at no fault, when there is an alternative, viable good faith explanation for the events surrounding Plaintiffs' former counsel's actions would be unjust, even if that alternative explanation is not as compelling as the narrative that Plaintiffs' former counsel acted willfully or in bad faith in connection with Dr. Asgharian's disclosure.

Regardless, given that the Court has assumed for purposes of its *Ehrenhaus* analysis that Plaintiffs' former counsel did indeed violate Fed. R. Civ. P. 26(a) by falsely disclosing that Dr. Agharian had opinions that he never actually had, this portion of the third factor certainly weighs heavily in favor of dismissal.

Regarding the fourth *Ehrenhaus* factor, i.e., whether the Court warned Plaintiffs in advance that dismissal of the action would be a likely sanction for noncompliance, Plaintiffs correctly note that "this is the first time any issue regarding Plaintiffs' expert has occurred, therefore the Court has not warned Plaintiffs or otherwise indicated they would be subject to sanctions related to this issue." *Response* [#205] at 11.  Defendant agrees with that statement, insofar as it goes, but argues that the Court "cannot warn a party about conduct that the party concealed" and that "attorneys admitted to practice in federal court are expected to know that the Federal Rules of Civil Procedure already warn of sanctions like these for failures to comply with expert disclosure obligations." *Reply* [#232] at 10.  While the Court is sympathetic to Defendant's argument that the Federal Rules of Civil Procedure

alone provide enough advance warning to Plaintiffs' counsel, the Court is cognizant of the Tenth Circuit's precise wording of this factor: that the Court consider "whether the *court* warned the party in advance that dismissal of the action would be a likely sanction." *Ehrenhaus*, 965 F.2d at 921 (emphasis added).  If the Federal Rules of Civil Procedure were sufficient consideration here, then this factor would always be a foregone conclusion. Here, the undersigned has certainly never warned Plaintiffs, and there is no indication that the Magistrate Judge formerly assigned to the case ever did either. While Defendant points to a statement by the former Magistrate Judge "caution[ing] Plaintiff[s] to better comply with [their] discovery obligations in the future," and stating that the Court would "take the current [discovery] issues into consideration should further discovery issues arise and costs are sought," no admonishment regarding the sanction of dismissal was ever given to Plaintiffs, insofar as the Court can tell, regarding this or any other issue in the case.  *Reply* [#232] at 10 (citing *Oct. 27, 2017 Hearing Minutes* [#118] at 2).  Therefore, the Court finds that this factor weighs against dismissal.[10]

Regarding the fifth *Ehrenhaus* factor, i.e., the efficacy of lesser sanctions, Defendant argues that no lesser sanction is appropriate and provides no argument why, in the alternative, any lesser sanction should be imposed.  *See, e.g.*, *Reply* [#232] at 9-10.  In other words, based on the briefs, Defendant wants dismissal, or nothing.  *See id.*  Because there is no argument provided regarding the efficacy of lesser sanctions, the Court finds that this factor is neutral.

---

[10]   Of course, to the extent any issue arises in the future regarding the designation of Plaintiffs' expert witness(es), Plaintiffs are now on notice–and hereby formally warned--that dismissal of their action is a likely sanction.

In sum, the Court finds that the first factor regarding prejudice weighs heavily against dismissal; that the second factor regarding the judicial process weighs slightly in favor of dismissal; that the third factor regarding culpability weighs heavily against dismissal as to Plaintiffs' actions, weighs heavily in favor of dismissal as to Plaintiffs' former counsel's alleged actions, and is neutral as to Plaintiffs' current counsel's alleged actions; that the fourth factor regarding dismissal warnings weighs against dismissal; and that the fifth factor regarding lesser sanctions is neutral.

In short, there are certainly factors weighing both in favor of and against dismissal. However, on balance, the Court finds that dismissal is inappropriate under these circumstances. Thus, because Defendants do not ask the Court to consider any lesser sanction in the alternative to dismissal, the Motion for Sanctions [#194] is **denied**.

As a necessary corollary to that holding, the Motion for Extension [#170] must be granted. There is no dispute that Dr. Asgharian will not be providing any opinion evidence in this case on behalf of Plaintiffs. Thus, if the Motion for Extension [#170] were not granted, Plaintiffs would have no medical expert testimony which, as discussed above, would be equivalent to dismissal of Plaintiffs' action. Accordingly, the Motion for Extension [#170] is **granted**, as stated below.

### III.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion for Extension [#170] is **GRANTED** and the Motion for Sanctions [#194] is **DENIED**.

IT IS FURTHER **ORDERED** that Plaintiffs shall formally withdraw their designation

of Dr. Asgharian **no later than May 15, 2020** if they have not already done so.

IT IS FURTHER **ORDERED** that the affirmative expert witness disclosure deadline

is extended to **June 1, 2020**.[11]

IT IS FURTHER **ORDERED** that the rebuttal expert witness disclosure deadline is

extended to **July 1, 2020**.

BY THE COURT:

Dated:  May 1, 2020

Kristen L.  Mix
United States Magistrate Judge

---

[11]  Plaintiffs note that they already have another affirmative expert witness lined up but are simply waiting on the Court's order on their Motion for Extension [#170] to formally designate him. *Response* [#205] at 3 ("As far as Plaintiffs are concerned, this case is on track for trial whenever the Court should choose to set it, with Board Certified Obstetrician, Jason James M.D. to provide expert opinions, if allowed, for Plaintiffs regarding the breaches in the standard of care which contributed to cause the death of baby Charlie Hallum and attendant harm to his mother and father, in line with what the Court has already found to be a proper cause of action in this case.").